UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FRANCISCO MARTINEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF STOCKTON; GREGORY LEE (#2714) (originally sued as Doe 1); LOS ANGELES POLICE DEPARTMENT (originally sued as Doe 2); and DOES 3–10, in both their individual & official capacities,<br><br>Defendants. | No. 2:18-cv-00964-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Defendant Los Angeles Police Department's[1] ("Defendant") Motion for Summary Judgment. (ECF No. 99.) Plaintiff Juan Francisco Martinez

---

[1] This action was initially brought against Defendants County of Los Angeles, Los Angeles County Sheriff's Department, County of San Joaquin, San Joaquin County Sheriff's Department, Ronald Zalunardo, Gregory Lee, Eric Jackman, City of Stockton, and Stockton Police Department, who have all been dismissed from this action. Defendant Los Angeles Police Department is the sole remaining defendant.

1

("Plaintiff") filed an opposition.[2]  (ECF No. 101.)  Defendant replied.  (ECF No. 104.)  For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment.  (ECF No. 99.)

### I. FACTUAL AND PROCEDURAL BACKGROUND[3]

On May 28, 2016, Officer Gregory Lee ("Lee") of the Stockton Police Department ("SPD") arrested and detained Plaintiff for public intoxication.  (PMF ¶ 12; Defendant's Responses and Objections to PMF ("DRO"), ECF No. 105 ¶ 12.)  During this detention, Lee searched for any outstanding warrants naming Plaintiff as the subject.  (PMF ¶ 13; DRO ¶ 13.)  During his search, Lee discovered a no-bail felony warrant for "Juan Martinez," an Hispanic male with black hair and brown eyes, 5'1" tall, weighing 140 pounds, with a birthdate that matched exactly to Plaintiff's birthdate.  (*Id.*)  However, this was not Plaintiff.  (PMF ¶ 21; DRO ¶ 21.)  Though they share the same name and birthdate, Plaintiff is 5'9" and 230 pounds.  (*Id.*)  Thus, Plaintiff alleges he was wrongfully arrested on the warrant and spent five days incarcerated until a court concluded he was not the intended subject of the warrant.  (*See* FAC at 19.)

The California Department of Justice ("CDOJ") Wanted Persons System ("WPS") identified Defendant as the originating agency and the agency to contact regarding the warrant.[4]  (PMF ¶ 13; DRO ¶ 13.)  However, this warrant was in the County Warrant System ("CWS"), a

---

[2] The Court notes, pursuant to Local Rule 230(c), Plaintiff's opposition was untimely filed.  *See* E.D. Cal. L.R. 230(c) (An opposition "shall be filed and served not less than fourteen (14) days preceding the noticed (or continued) hearing date . . . . A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion.")  However, the Court, in its discretion, shall nevertheless consider the filing.

[3] The following facts are taken from Plaintiff's Statement of Material Facts ("PMF") (ECF No. 102) and Defendant's Statement of Uncontroverted Facts ("DSUF") (ECF No. 100) and are deemed undisputed unless otherwise noted.

[4] WPS is a computer database that indexes active warrants issued by any state court in any county in the State of California.  (PMF ¶ 8; DRO ¶ 8.)  To find outstanding warrants that may have issued from any court in the state, a California law enforcement agency uses WPS to locate the warrant, generally by conducting a search in WPS using a name and birthdate.  (PMF ¶ 9; DRO ¶ 9.)  WPS is only a pointer system; it is not a depository of the actual warrant.  (PMF ¶ 10; DRO ¶ 10.)  For the actual warrant, an agency that used WPS to locate the warrant must contact the agency responsible for creating the WPS warrant entry.  (*Id.*)

system only Los Angeles County agencies can access.  (PMF ¶ 6; DRO ¶ 6.)  If a law enforcement agency outside of Los Angeles County seeks information about a CWS warrant, the agency must contact the Los Angeles County agency identified as the filing agency for the CWS warrant.  (*Id.*)  Accordingly, SPD contacted Defendant regarding the warrant.  (PMF ¶ 14; DRO ¶ 14.)

Defendant's policy requires that outside law enforcement agencies be sent a Warrant Information Sheet ("WIS")[5] before Defendant provides the outside agency with the corresponding warrant abstract.[6]  (DSUF ¶ 13; PSDF ¶ 13.)  However, it is unclear whether a WIS was sent to SPD.  (DSUF ¶ 20; PSDF ¶ 20.)  Plaintiff argues Defendant failed to transmit a WIS (DSUF ¶ 1; PSDF ¶ 1), but this cannot be confirmed because CDOJ purged any records that would have shown transmission of the WIS to SPD.[7]  (DSUF ¶ 21; PSDF ¶ 21.)  Plaintiff alleges Defendant's purported failure to transmit the WIS was the result of a long-standing practice of failing to

---

[5]  A WIS reflects the warrant subject's known identifiers as recorded in CWS, thereby enabling the agency to determine if a detainee is the intended subject of the CWS warrant before the CWS warrant abstract is generated.  (PMF ¶ 7; DRO ¶ 7.)

[6]  Plaintiff objects to the relevancy of this fact.  (Plaintiff's Statement of Disputed Facts ("PSDF"), ECF No. 102 ¶ 13.)  The test for relevance under Federal Rule of Evidence 401 is whether "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The standard for relevance is a very low bar that is easily met.  *United States v. Miranda–Uriarte*, 649 F.2d 1345, 1353 (9th Cir. 1981).  Here, Defendant's policy is at the heart of Plaintiff's claim and thus is "of consequence."  (*See* Plaintiff's Fourth Amended Complaint ("FAC"), ECF No. 88 at 21) (alleging Defendant "is liable because the wrongful acts were pursuant to policies, practices and/or customs described above, approved and/or ratified by the agencies' respective policymakers, and because of its failure to adequately train its personnel").)  Accordingly, the objection is OVERRULED.

[7]  Plaintiff objects to the relevancy of this fact, arguing Plaintiff subpoenaed the CDOJ security logs for CLETS transmissions regarding Juan Martinez made on May 28, 2016, and the logs show there were no transmissions between Defendant and SPD on May 28, 2016, regarding Juan Martinez.  (PSDF ¶ 21.)  However, as Defendant points out, Plaintiff's subpoena only requested records of queries, not records related to transmissions.  (DRO ¶ 21.)  Accordingly, since CDOJ purged any relevant records, there is no evidence as to whether Defendant transmitted a WIS to SPD, which is "of consequence" to Plaintiff's claims.  (DSUF ¶ 21; PSDF ¶ 21); *see* Fed. R. Evid. 401.  Therefore, Plaintiff's objection is OVERRULED.

follow the procedures established by the CDOJ and Los Angeles County that require that the WIS be transmitted to the arresting agency.[8] (DSUF ¶ 1; PSDF ¶ 1.)

Plaintiff claims Defendant failed to exchange fingerprint facsimiles and other descriptive information to determine if he was the subject of the warrant (PMF ¶ 19), but instead only verified the existence of the outstanding warrant.[9] (PMF ¶ 15.) However, Defendant disputes that it failed to exchange a fingerprint facsimile. (DRO ¶¶ 15, 19.) Defendant points out that SPD used a LiveScan to fingerprint Plaintiff and, by using his fingerprints, obtained Plaintiff's "CII number."[10] (PMF ¶ 17; DRO ¶ 17.) Lee also reviewed the warrant abstract, which contained the CII number, which is a fingerprint facsimile. (DSUF ¶ 7; PSDF ¶ 7; DRO ¶ 19.)

During his deposition, Lee acknowledged that it was his (and the other arresting officer's) responsibility to ensure that Plaintiff was the person named in the warrant.[11] (DSUF ¶ 3; PSDF ¶

---

[8] Plaintiff disputes this, arguing Plaintiff complained of Defendant's failure to transmit the WIS as *one* of the ways Defendant failed to follow required procedures. (PSDF ¶ 1.) However, Plaintiff does not point to any other specific evidence of a failure to follow required procedures. (*See id.* (referencing Defendant's failure "to take other steps mandated by WPS and CWS procedures" and listing the failure to provide a WIS as an example of Defendant's failure to provide information about the warrant subject)). Accordingly, the Court finds this is not a genuine dispute.

[9] Defendant objects to the relevancy of Defendant's verification of the existence of the warrant. (DRO ¶ 15.) The Court agrees that the fact that Defendant queried WPS is not relevant to whether it provided SPD with the WIS or warrant abstract. *See* Fed. R. Evid. 401. The objection is SUSTAINED.

[10] LiveScan is an inkless fingerprinting process in which fingerprints are captured electronically though an electro-optical computerized device. (PMF ¶ 1; DRO ¶ 1.) These fingerprints are immediately transported electronically to the central computers at the CDOJ to allow real time matching of fingerprints. (*Id.*) A CII number is a law enforcement created unique fingerprint-matched numerical identifier that reliably identifies a person to the exclusion of all others even if names, birthdates and non-unique physical descriptors match. (PMF ¶ 2; DRO ¶ 2.) CII numbers are assigned by the CDOJ. (*Id.*)

[11] Plaintiff disputes and objects to this fact, arguing that Defendant may be jointly and severally liable. (PSDF ¶ 3.) However, Plaintiff concedes in opposition that "[w]hether in fact the CWS warrant(s) actually apply to the person in question, is determined by the officers and/or jailers who have (a) the detainee and (b) the CWS warrant data." (ECF No. 101 at 7.) Accordingly, this is not a genuine dispute. Further, Lee's understanding of his responsibilities is relevant to the issue of causation. *See* Fed. R. Evid. 401. Plaintiff's objection is OVERRULED.

3.)  However, SPD had not informed Lee that a person's CII number was a unique identifier. (DSUF ¶ 5; PSDF ¶ 5.)  Indeed, Lee did not know what a CII number was prior to this lawsuit. (DSUF ¶ 6; PSDF ¶ 6.)  Lee had been trained to arrest an individual if a person's identifiers — including their name, date of birth, gender, height, and weight — were a match to what was listed on a warrant.[12]  (DSUF ¶ 4; PSDF ¶ 4.)  Lee was aware that the warrant abstract listed the height and weight of its subject (which was significantly different from Plaintiff's height and weight), but Lee's practice and training was to arrest an individual with a matching name and birthdate even if the arrestee's physical characteristics did not match the descriptors listed in the warrant. (DSUF ¶ 10; PSDF ¶ 10.)  Further, Lee was not trained that by looking at a person's criminal history, it may be possible to verify whether that individual is the subject of a particular warrant. (DSUF ¶ 12; PSDF ¶ 12.)

Plaintiff initiated this action on November 21, 2017 (ECF No. 1) and filed the operative First Amended Complaint ("FAC") on August 20, 2019 (ECF No. 88).  Plaintiff asserts a 42 U.S.C. § 1983 ("§ 1983") claim against Defendant for wrongful incarceration in violation of the Fourteenth Amendment.  (*Id.* at 21.)  Defendant filed the instant motion for summary judgment on October 28, 2020.  (ECF No. 99.)

**II.     STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

---

[12]     Plaintiff objects to this fact's relevancy.  (PSDF ¶ 4.)  However, the Court finds Lee's training relevant to the issue of causation and thus OVERRULES the objection.  *See* Fed. R. Evid. 401.  This similarly applies to all of Plaintiff's objections to Lee's training.

1 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
2 solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at
3 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a
4 party who does not make a showing sufficient to establish the existence of an element essential to
5 that party's case, and on which that party will bear the burden of proof at trial.

6 If the moving party meets its initial responsibility, the burden then shifts to the opposing
7 party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*
8 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*
9 *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,
10 the opposing party may not rely upon the denials of its pleadings, but is required to tender
11 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
12 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c).  The opposing party must
13 demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the
14 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
15 the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for
16 the nonmoving party. *Id*. at 251–52.

17 In the endeavor to establish the existence of a factual dispute, the opposing party need not
18 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
19 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
20 trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is
21 to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
22 trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's
23 note on 1963 amendments).

24 In resolving the summary judgment motion, the court examines the pleadings, depositions,
25 answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.
26 R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence
27 of the opposing party is to be believed and all reasonable inferences that may be drawn from the
28 facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.

at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

### III.  ANALYSIS

Section 1983 provides that "[e]very person who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. A municipality may be liable for a constitutional violation under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).

Defendant moves for summary judgment, arguing Plaintiff cannot establish *Monell* liability on the basis that Plaintiff: (1) failed to provide evidence of a policy, practice, or custom that caused the violation of his rights (ECF No. 99 at 8–9); and (2) cannot prove Defendant's conduct caused Plaintiff's incarceration (*id.* at 9–10). The Court will address each argument in turn.

A.  <u>Failure to Establish a Policy, Practice, or Custom</u>

Defendant argues there is no evidence that it is Defendant's policy or long-standing custom to not send a WIS to outside law enforcement agencies prior to sending those agencies the corresponding warrant abstract. (ECF No. 99 at 8.) Indeed, Defendant argues it is Defendant's policy to do so. (*Id.*) In opposition, Plaintiff argues he need not prove an unconstitutional policy nor multiple violations. (ECF No. 101 at 16.)

To impose liability on a defendant for deficiencies in its policies or procedures, or for a failure to adequately train its employees, a defendant's omissions must amount to "deliberate indifference" to a constitutional right. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). To succeed, a plaintiff must demonstrate specific training deficiencies and either (1) that policy-making officials were aware of a pattern of constitutional violations, or (2) that training is obviously necessary to avoid constitutional violations. *City of Canton, Ohio*, 489 U.S. at 390–91. The failure must be the result of "a 'deliberate' or 'conscious' choice by a municipality." *Id.* at 389. Neither negligent nor even grossly negligent training by itself gives rise to a § 1983 municipal liability claim. *Id.* at 391–92 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident . . . . Thus, permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto *respondeat superior* liability on municipalities — a result we rejected in *Monell*."). Additionally, "[w]hile inadequate training may amount to a policy for *Monell* liability, 'adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable.'" *Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1179 (E.D. Cal. 2008), *aff'd*, 340 F. App'x 377 (9th Cir. 2009) (quoting *City of Canton, Ohio*, 489 U.S. at 391).

Further, the Ninth Circuit has long held that a single incident will not suffice to show a policy. *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). In order to succeed, a plaintiff must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "The custom must be so 'persistent and widespread' that it constitutes a permanent and well settled city policy." *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

In the instant case, looking at the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has failed to provide evidence of Defendant's policy or custom that violated Plaintiff's constitutional rights.  It is undisputed that Defendant's policy is to provide all relevant warrant information by first sending a WIS then the corresponding warrant abstract to an outside agency.  (DSUF ¶ 13; PSDF ¶ 13.)  This is sufficient information for an officer to verify whether the detainee is the intended subject of the warrant.  (PMF ¶ 7; DRO ¶ 7.)  However, even if Defendant failed to send a WIS, Lee received and reviewed the warrant abstract, which also contained the requisite information to determine Plaintiff was not the intended subject of the warrant.  (DSUF ¶ 7; PSDF ¶ 7.)  Further, since any evidence of Defendant's failure to send a WIS, in violation of its policy, has been destroyed, Plaintiff cannot provide any evidence of such a violation.  (DSUF ¶ 21; PSDF ¶ 21.)  Even if Plaintiff could provide such evidence, a one-time incident is insufficient to satisfy Plaintiff's burden.  *Christie*, 176 F.3d at 1235.  At best, Plaintiff has pleaded a case of adequately trained officers making a single mistake.  *See Sanders*, 551 F. Supp. 2d at 1179.  Accordingly, the Court finds there is no triable issue of fact as to Defendant's policy or custom.  *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 797–98 (9th Cir. 2014) (affirming the district court's granting of summary judgment when the plaintiff failed to provide evidence supporting a Fourteenth Amendment claim, and thus a reasonable jury could not find in favor of the plaintiff).

None of Plaintiff's contentions nor anything else in the record demonstrates a specific training deficiency nor a "deliberate" or "conscious" choice by Defendant to implement unconstitutional policies.  *See City of Canton, Ohio*, 489 U.S. at 389.  As Plaintiff has provided no evidence as to Defendant's unconstitutional policy, custom, or a failure to train, its sole claim against Defendant fails as a matter of law.  *See Sanders*, 551 F. Supp. 2d at 1179 (granting summary judgment on *Monell* claim because "Plaintiff has provided no evidence of any policies, has not shown that [the defendant city's] training was inadequate, and has not shown any culpable conduct by final policy makers.  All the evidence shows is a single incident by non-policymaking police officers, which is insufficient to show a policy or custom." (internal citations omitted)); *Carrasco v. City of Vallejo*, No. Civ.S001968 WBS JFM, 2001 WL 34098655, at *7 (E.D. Cal.

Sept. 6, 2001) (granting summary judgment on *Monell* claim because the plaintiff failed to point to any evidence of a policy or custom in connection with the alleged constitutional deprivations nor provided any evidence suggesting the city failed to train its officer or that such a failure to train was attributable to deliberate indifference).

### B. Failure to Establish Causation

Defendant also argues there is no causal link between Defendant's alleged failure to send the WIS to SPD and Plaintiff's wrongful arrest because there was no additional information that would have been included on a WIS as compared to the warrant abstract that the arresting officer reviewed. (ECF No. 99 at 9–10.) In opposition, Plaintiff argues Defendant's refusal to take steps to discuss with SPD whether Plaintiff was the intended subject of the warrant caused Plaintiff's injury. (ECF No. 101 at 20.)

For a defendant's conduct to be "the actual cause of [a plaintiff's] injury," a plaintiff must show "the injury would not have occurred 'but for' the [alleged] conduct." *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978). "Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury." *White*, 901 F.2d at 1506. A defendant's conduct "is not the proximate cause of [a plaintiff's] alleged injuries if another cause intervenes and supersedes [its] liability for the subsequent events." *Id.* However, "foreseeable intervening causes . . . will not supersede the defendant's responsibility." *Id.* If "reasonable persons could differ" over the question of foreseeability, "summary judgment is inappropriate and the question should be left to the jury." *Id.*

Here, looking at the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has failed to provide evidence that Defendant caused Plaintiff's incarceration. Indeed, Plaintiff concedes "[w]hether in fact the CWS warrant(s)

actually apply to the person in question, is determined by the officers and/or jailers who have (a) the detainee and (b) the CWS warrant data." (ECF No. 101 at 7.)  Thus, it was SPD's responsibility to determine whether Plaintiff was the intended subject of the warrant, not Defendant.  Further, it is undisputed that Lee had all the requisite information available to him to determine if Plaintiff was the intended subject of the warrant, thus superseding and breaking the causal chain.  (DSUF ¶¶ 7–12; PSDF ¶¶ 7–12); *see Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009) ("liability may not attach if 'an intervening decision of an informed, neutral decision-maker "breaks" the chain of causation,' meaning that the harm to the plaintiff can be traced more directly to an intervening actor" (quoting *Murray v. Earle*, 405 F.3d 278, 292 (5th Cir. 2005))); *Smith v. Harrington*, No. C 12-03533 LB, 2015 WL 1407292, at *26 (N.D. Cal. Mar. 27, 2015), *aff'd sub nom. Smith v. Liddell*, 682 F. App'x 630 (9th Cir. 2017) (granting summary judgment and finding that when an independent body intervenes by reviewing the relevant evidence, the defendant was not the proximate nor legal cause of the plaintiff's injury).

Even if Defendant failed to send a WIS, the WIS contained no additional information from the warrant abstract, thus such a failure would not have changed the outcome.  (DRO ¶ 13; DSUF ¶¶ 18–19); *see Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1071 (D. Mont. 2005), *aff'd*, 234 F. App'x 463 (9th Cir. 2007) ("the causation inquiry is necessarily limited to those shortcomings in the implementation of the . . . policy that actually facilitated [the injury]").  Defendant could not have reasonably foreseen that, provided with the requisite information to demonstrate Plaintiff was not the intended subject of the warrant, SPD would nevertheless still arrest Plaintiff.  *See Van Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (quoting *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989)) ("'[a]n unforeseen and abnormal intervention . . . breaks the chain of causality, thus shielding the defendant from [§ 1983] liability'").  Accordingly, the Court finds there is no triable issue of fact as to causation.  *See Kong Meng Xiong v. City of Merced*, No. 1:13-CV-00083-SKO, 2015 WL 4598861, at *31 (E.D. Cal. Jul. 29, 2015) (granting summary judgment on a *Monell* claim when there was no evidence of a causal link between a single policy violation and the alleged injury).  Therefore, a reasonable jury could not find in favor of Plaintiff, and thus summary judgment is appropriate.

*See id.*; *Van Ort*, 92 F.3d at 837 (quoting *Springer v. Seaman*, 821 F.2d 871, 876–77 (1st Cir. 1987) ("although 'the question of proximate causation [in a § 1983 action] is sometimes for the court and sometimes for the jury,' the court decides whether reasonable disagreement on the issue is tenable").

Because the Court concludes that no genuine issues of fact remain as to whether Defendant had a policy or custom that violated Plaintiff's constitutional rights and as to whether this policy or custom caused the injury Plaintiff has alleged, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's sole claim against Defendant.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment. (ECF No. 99). The Clerk of Court is directed to enter judgment in Defendant's favor and close the case.

IT IS SO ORDERED.

DATED: March 3, 2022

Troy L. Nunley
United States District Judge